*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT FOWLER,

        Plaintiff/Counterdefendant-
        Appellant/Cross-Appellee,

v

DONALD KEIPER and US ICE BLASTING, LLC,

        Defendants-Appellees/Cross-
        Appellants,

and

KEIPER MECHANICAL, INC.,

        Defendant/Counterplaintiff-
        Appellee/Cross-Appellant.

UNPUBLISHED
June 22, 2023

No. 360216
Wayne Circuit Court
LC No. 19-015323-CB

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order dismissing the last remaining claim of the case in this business-related suit between two former friends. Plaintiff's arguments on appeal relate to previous court orders granting defendants, Donald Keiper (Don), Keiper Mechanical, Inc. (KMI), and US Ice Blasting, LLC (US Ice) summary disposition of plaintiff's four claims. Defendants cross-appeal as of right the same order of final judgment on all claims and counterclaims, as well as the order granting plaintiff's motion to reopen the case and enter final judgment. We affirm.

## I. FACTUAL BACKGROUND

Plaintiff and Don met in high school and were friends for over 30 years. After serving in the Marine Corps together, plaintiff went into plumbing and Don into heating, ventilation, and air conditioning (HVAC). In 2001, Don formed KMI, a commercial and residential plumbing,

-1-

heating, and insurance restoration business. According to plaintiff, Don asked plaintiff to join the company for a 10% interest after five years with no buy-in, and plaintiff declined because KMI was nonunion. In the summer of 2002, plaintiff formed his own business called Workforce Construction, and performed two to three jobs installing sump pumps for the city of Auburn Hills. Later in 2002, KMI joined the union, and according to plaintiff, he and Don agreed that plaintiff would join KMI under their previously agreed terms. Plaintiff started working for KMI as a plumber on September 8, 2002.

Plaintiff alleged that in 2005, he, Don, and their friend, Eric Whitcomb, attended dinner before their 15-year high school reunion and at dinner, Don presented plaintiff with a loose-leaf paper indicating that as of that date, plaintiff had a 10% ownership interest in KMI, which they both signed. Plaintiff had this paper for many years, but lost it in a move. Plaintiff alleged that in 2008, he and Don had lunch and orally agreed to modify their previous agreement to make plaintiff a 49% owner of KMI, and Don 51%. Plaintiff alleged that he and Don met with attorneys or discussed having an attorney formalize their agreement several times over the years, but it was never done.

Plaintiff alleged that in 2017, he forwent a substantial year-end bonus because he and Don agreed to use the money they each would have received to make a down payment on the building KMI occupied at 12201 Merriman Road in Livonia. According to plaintiff, the parties agreed to do this with the expectation that they would share in the proceeds from the eventual sale of the building when they chose to retire. The Merriman property is under a land contract dated February 22, 2019, by Seaway Realty Properties, LLC, to Keiper Real Estate, LLC.[1]

Plaintiff alleged that in spring or summer 2018, Don showed interest in starting an ice blasting business—a cleaning method for industrial equipment, fire damage, and large-scale projects. According to plaintiff, he and Don agreed that Don would be a 34% owner in the newly formed US Ice, plaintiff would be 33%, and Don's son would be the remaining 33%. Plaintiff alleged that Don formed US Ice in October 2018 behind his back, and he received no financial benefit.

The relationship between plaintiff and Don began to break down in May 2019, resulting in no communication by June. On November 5, 2019, during a confrontation regarding changing a work schedule, Don told plaintiff that his tenure with KMI was over. Don told plaintiff that if he did not return the keys to a KMI truck plaintiff used for business and personal use, Don would report it stolen to the police. Don did this, and plaintiff was ultimately arrested for driving a stolen vehicle.

## II. PROCEDURAL BACKGROUND

Plaintiff filed a first amended complaint against defendants alleging four counts: (I) shareholder oppression, (II) breach of fiduciary duty, (III) breach of partnership agreement, and (IV) breach of contract related to (1) the alleged agreement that plaintiff was a shareholder of KMI,

---

[1] The address listed on the land contract for both Seaway Realty and Keiper Real Estate is the address of the Merriman property itself—12201 Merriman Road.

(2) the alleged agreement to split the proceeds from the eventual sale of the Merriman property, and (3) the alleged agreement that plaintiff was an owner of US Ice. KMI counterclaimed against plaintiff for (I) tortious interference with business relationships and (II) conversion. Defendants moved for summary disposition of all of plaintiff's claims, and plaintiff moved for summary disposition of KMI's counterclaims.

The court granted defendants summary disposition of Counts I (shareholder oppression), II (breach of fiduciary duty), III (breach of partnership agreement), and IV (breach of contract related to Merriman property and US Ice); it denied defendants summary disposition of Count IV in relation to the alleged agreement that plaintiff was a shareholder of KMI. The court granted plaintiff summary disposition of KMI's counterclaim for tortious interference (Count I) and denied plaintiff summary disposition of KMI's counterclaim for conversion (Count II). Defendants moved for reconsideration of this order, arguing that the court committed a manifest error because it granted summary disposition of plaintiff's shareholder oppression claim in Count I, but denied summary disposition of plaintiff's breach-of-contract claim in Count IV regarding an alleged shareholder agreement, incorrectly presuming that Count IV was based on different factual allegations. The court agreed, granting defendants reconsideration, and dismissing the remaining breach-of-contract claim in Count IV. Plaintiff moved for reconsideration of this order, which the court struck as an impermissible successive motion. On November 16, 2021, the court entered a stipulated order of voluntary dismissal of Count II of KMI's counterclaim, stating that it resolved the last pending claim and closed the case.

Plaintiff filed a claim of appeal of the November 16, 2021 order in Docket No. 359509; however, he simultaneously moved in the trial court to reopen the case and enter a final judgment on all claims and counterclaims because the stipulated dismissal order was ambiguous whether it was a final order—it dismissed KMI's counterclaim Count II without prejudice, but stated that it resolved all claims and closed the case. Defendants moved in this Court to dismiss plaintiff's claim of appeal for lack of jurisdiction, which this Court granted. *Fowler v Keiper*, unpublished order of the Court of Appeals, entered January 25, 2022 (Docket No. 359509). Thereafter, the trial court entered an order reopening the case and directing plaintiff to enter a final judgment on all claims and counterclaims. On February 7, 2022, the trial court entered this order granting plaintiff's motion to reopen the case, and dismissed Count II of KMI's counterclaim with prejudice, constituting an adjudication on the merits. This order resolved all claims and closed the case. Plaintiff then filed his claim of appeal in this case, Docket No. 360216,[2] and defendants filed a cross-appeal.[3]

---

[2] Plaintiff also filed a claim of appeal in Docket No. 360845, which was dismissed for lack of jurisdiction. *Fowler v Keiper*, unpublished order of the Court of Appeals, entered April 5, 2022 (Docket No. 360845).

[3] We note briefly defendants' assertion on appeal that this Court lacks jurisdiction over the February 7, 2022 order dismissing the last remaining claim. As the parties concede, this Court dismissed plaintiff's initial appeal of right for lack of jurisdiction, and plaintiff timely filed a claim of appeal from the February 7, 2022 final order. Because Count II of KMI's counterclaim was

## III. STANDARDS OF REVIEW

"This Court reviews de novo the grant or denial of a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 229; 964 NW2d 809 (2020) (quotation marks and citation omitted). Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). The trial court must accept all of the factual allegations in the complaint as true, and decide the motion on the pleadings alone. *Id*. at 160. A motion under this subrule can only be granted when the claim is so clearly unenforceable that no factual development could possibly justify recovery. *Id*.

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. "A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Glasker-Davis*, 333 Mich App at 229 (quotation marks and citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *El-Khalil*, 504 Mich at 160 (quotation marks and citation omitted).

## IV. SHAREHOLDER OPPRESSION

Plaintiff first argues that the trial court erred in dismissing his claim for shareholder oppression because he sufficiently pleaded this claim, and genuine issues of material fact exist regarding whether he is a shareholder of KMI. We disagree.

MCL 450.1489 of the Michigan Business Corporation Act (MBCA), MCL 450.1101 *et seq.*, provides that "[a] shareholder" may bring an action "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." MCL 450.1489(1). The statute does not contain the word "minority," but courts have described the statute as allowing for actions by "minority shareholders," see e.g., *Madugula v Taub*, 496 Mich 685, 697; 853 NW2d 75 (2014), presumably because minority shareholders are generally vulnerable to oppression, see *Estes v Idea Engineering & Fabrications, Inc*, 250 Mich App 270, 278; 649 NW2d 84 (2002). A shareholder who succeeds in establishing director misconduct may be granted a wide variety of equitable relief. MCL 450.1489(1)(a)-(f). However, the plaintiffs in a suit under MCL 450.1489(1) "may only be current shareholders." *Estes*, 250 Mich App at 282.

The Michigan Supreme Court has recognized the contractual nature of the relationship between a corporation and its shareholders, and has looked to a corporation's articles of

---

previously dismissed without prejudice, under MCR 2.504(A)(1), the trial court's express dismissal of Count II with prejudice constitutes an order entered after reversal of an earlier judgment or order, so it is a final order under MCR 7.202(6)(a)(*i*), and this Court has jurisdiction.

incorporation, bylaws, and governing statutes to determine a shareholder's interests. *Madugula*, 496 Mich at 718. Additionally, the MBCA defines "shareholder" as " 'a person that holds units of proprietary interest in a corporation . . . .' " *Id*., quoting MCL 450.1109(2). Among the rights shareholders have are "the right to vote, inspect the books, and receive distributions." *Madugula*, 496 Mich at 718. Shareholders may also enter into shareholder agreements, the corporation's breach of which may be evidence of shareholder oppression. *Id*. at 718-719.

The evidence plaintiff presented was insufficient to create a genuine issue of fact, but rather, the evidence establishes that he is not a shareholder, and therefore, summary disposition was proper under MCR 2.116(C)(10).

The KMI articles of incorporation listed Don as the registered agent, and were signed by Don only on November 28, 2001. The KMI bylaws stated there would be one director, and that the certificates for shares shall be signed by the chairman, president or vice present, and the treasurer or secretary. The bylaws were signed by Don only. The yearly minutes of the meetings of the incorporators, shareholders, and board of directors of KMI noted that Don held the office of president, vice president, secretary, and treasurer, and was the only person "present" for such meetings. Plaintiff did not believe that any shareholder meetings were held, but he was not present at any, and believed that his 49% ownership interest meant he held shares in the company. The only stock certificate in the record awarded Don 1,000 shares. Schedule K-1 tax forms for shareholder's share of income, deductions, credits, etc., were issued to Don from 2014 to 2019. Plaintiff admitted he never received a Schedule K-1 during his tenure with KMI. Plaintiff did not have access to KMI's books; Don and his wife, Christine Keiper, handled them. Plaintiff did not do any banking for KMI, and never signed any checks. He never saw any stock certificates or discussed stock options as an employee.

Plaintiff was married to Monica Fowler in 2007, and they divorced in 2015. Plaintiff filed the complaint, swore the allegations were true, and represented that the marital assets were the house, two vehicles, two 401(k)s, and a pension; separate assets were personal belongings and checking and savings accounts. Nowhere in the complaint is any reference to ownership in any business because, according to plaintiff, it was not necessary or in dispute in the divorce.

Thus, viewed in a light most favorable to plaintiff, this evidence establishes that there is no genuine issue of material fact that plaintiff was not a shareholder of KMI. Therefore, he lacked standing to bring a claim for shareholder oppression under MCL 450.1489, and summary disposition of Count I was proper.

V. BREACH OF FIDUCIARY DUTY

Plaintiff argues that the trial court improperly dismissed his claim for breach of fiduciary duty because as the "minority shareholder," Don owed him fiduciary duties, which he breached. We disagree.

"A fiduciary relationship is one in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship." *Murphy v Inman*, 509 Mich 132, 146; 983 NW2d 354 (2022) (quotation marks and citation omitted). In Michigan, directors and officers of corporations owe fiduciary duties and a strict duty of good faith to the corporation they serve,

as well as directly to its shareholders. *Id*. at 147-148. Here, however, there is no genuine issue of material fact that plaintiff is not a shareholder, as discussed above. This is fatal to his claim for breach of fiduciary duty. Therefore, the trial court properly granted defendants summary disposition of Count II of the amended complaint because summary disposition is appropriate under MCR 2.116(C)(10).

## VI. BREACH OF PARTNERSHIP AGREEMENT

Plaintiff argues that the trial court erred in dismissing his claim for breach of partnership agreement because a partnership can exist simultaneously with other corporate entities, and plaintiff established genuine issues of material fact that the parties were partners. We disagree.[4]

The Uniform Partnership Act (UPA), MCL 449.1 *et seq*., defines a partnership as "an association of 2 or more persons, which may consist of husband and wife, to carry on as co-owners a business for profit[.]" MCL 449.6(1). This statute also provides:

> (2) But any association formed under any other statute of this state, or any statute adopted by authority, other than the authority of this state, is not a partnership under this act, unless such association would have been a partnership in this state prior to the adoption of this act; but this act shall apply to limited partnerships except in so far as the statutes relating to such partnerships are inconsistent therewith. [MCL 449.6(2).]

The trial court did not specify whether it granted defendants summary disposition of this claim under MCR 2.116(C)(8) or (10). Defendants argue summary disposition was appropriate under MCR 2.116(C)(8) because MCL 449.6(2) precludes the existence of a partnership between the parties because KMI is a corporation and US Ice is an LLC. Plaintiff relies on *Byker v Mannes*, 465 Mich 637; 641 NW2d 210 (2002), to argue that this is a misstatement of the law.

In *Byker*, the issue was whether the parties had a "super partnership" over several corporate entities they created, including limited partnerships, corporations, and a partnership. *Id*. at 640. However, the issue considered by the Supreme Court specifically was whether MCL 449.6(1) requires a subjective intent to form a partnership or merely an intent to carry on, as co-owners, a business for profit. *Id*. at 638. The Court held that under MCL 449.6(1), "in ascertaining the existence of a partnership, the proper focus is on whether the parties intended to, and in fact did 'carry on as co-owners a business for profit' and not on whether the parties subjectively intended to form a partnership." *Id*. at 653. The Court remanded the matter to this Court for an analysis under the proper test to determine whether a partnership existed, *id*., and did not discuss or analyze MCL 449.6(2). On remand, this Court again determined that no super partnership existed. *Byker v Mannes (On Remand)*, unpublished per curiam opinion of the Court of Appeals, entered February 25, 2003 (Docket No. 205266), p 1, rev'd 469 Mich 881 (2003). The Michigan Supreme

---

[4] In addition to the standards of review for a motion for summary disposition provided above that also apply here, we review issues of statutory interpretation de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 515; 821 NW2d 117 (2012).

Court reversed this decision, reinstating the decision of the circuit court that a super partnership did exist. *Byker v Mannes*, 469 Mich 881, 668 NW2d 909 (2003).

The *Byker* case is distinguishable from the facts at hand, which does not include a super partnership, and plaintiff's argument relying on it is unpersuasive as the *Byker* line of decisions does not discuss or analyze MCL 449.6(2).

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent[.] [*Spectrum Health Hosps*, 492 Mich at 515 (quotation marks, brackets, and citation omitted).]

MCL 449.6(2) clearly states that "any association formed under any other statute of this state . . . is not a partnership under this act." It is undisputed that KMI is a corporation, and US Ice is an LLC. Therefore, plaintiff's claim for breach of a partnership agreement fails to state a claim upon which relief can be granted, and summary disposition was proper under MCR 2.116(C)(8).[5]

## VII. BREACH OF CONTRACT

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *Id*. If the parties do not agree on the material terms of a contract, then there is no meeting of the minds and no enforceable contract. *Kamalnath v Mercy Mem Hosp Corp*, 194 Mich App 543, 548; 487 NW2d 499 (1992). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id*. (quotation marks and citation omitted). A "meeting of the minds" simply means mutual assent. *Id*. at 548-549.

### A. PURCHASE OF MERRIMAN BUILDING

Plaintiff argues that summary disposition of this claim was improper because Don breached their agreement by purchasing the property under a holding company with KMI funds, and the statute of frauds defense does not apply and is waived.

---

[5] This renders discussion of whether summary disposition was proper under MCR 2.116(C)(10) unnecessary.

The statute of frauds specifies that certain contracts must be in writing to be enforceable. MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Plaintiff asserts that the statute of frauds does not apply because the alleged agreement was only for the proceeds for the sale of the Merriman property, rather than an interest in the property itself. The Michigan Supreme Court has stated that " '[t]he general rule is that agreements to share profits and losses arising from the purchase and sale of real estate are not contracts for the sale or transfer of interests in land and need not be in writing.' " *Koffman v Mathews*, 352 Mich 390, 398; 89 NW2d 756 (1958), quoting *Price v Nellist*, 316 Mich 418, 422; 25 NW2d 512 (1947); see also *In re Handelsman*, 266 Mich App 433, 440; 702 NW2d 641 (2005). Plaintiff's argument, however, is disingenuous as he states in his brief on appeal, as well as in the question presented of this issue, that he and Don "entered into an oral agreement to *jointly purchase the real property*" and split the proceeds from a future sale, and that Don "breached this agreement by acquiring the property for himself." Moreover, this rule is limited to cases where the partnership "was formed to deal in real estate as a commercial proposition; that is, to speculate by buying and selling real estate, or interests therein, for profit." 18 ALR 484, § 1. Excluded from this rule are cases where "the holding or acquiring of real estate is merely incidental to the carrying on of the business for which the partnership was formed." *Id.*; see also 95 ALR 1242. The acquiring of the Merriman property was incidental to the business of KMI, and was simply where the company was housed. Thus, based on plaintiff's allegation that the parties agreed that plaintiff would have an interest in the property, the statute of frauds would apply to bar plaintiff's claim.

However, plaintiff is correct that defendants failed to list the statute of frauds in its affirmative defenses filed in response to plaintiff's original and first amended complaints. "A party that fails to raise an affirmative defense as required by MCR 2.111(F) waives the defense." *Harris v Vernier*, 242 Mich App 306, 312; 617 NW2d 764 (2000); see also MCR 2.111(F)(3)(a). Thus, the statute of frauds cannot be invoked as a basis for summary disposition.

However, summary disposition is nonetheless appropriate under MCR 2.116(C)(10). The trial court granted defendants summary disposition of this claim, and stated at the hearing that the facts alleged by plaintiff were "too tenuous" and no consideration was shown. This was not in error. There is no genuine issue of material fact that plaintiff failed to meet his burden of establishing a valid contract. He stated that there was an oral agreement in which the parties agreed to purchase the Merriman property and one day split the proceeds in the event of a sale, and that he forwent a bonus to use the money as a down payment. However, there is no record of this aside from plaintiff's statement. Plaintiff's counsel asserted at oral argument that the parties were to split the $180,000 down payment, but did not settle on "an exact number" to contribute, and that the "goal was to leave the money in the company" to use to purchase the building. Thus, there was no genuine issue of material fact that there was no evidence of consideration for this alleged agreement, and summary disposition was proper under MCR 2.116(C)(10).

## B. US ICE

Plaintiff argues that the court improperly granted defendants summary disposition of this claim because he provided evidence that there was an oral agreement for plaintiff to be a 33% owner, and Don breached the agreement by forming US Ice behind plaintiff's back and forcing him out of the business. We disagree.

The Michigan Limited Liability Company Act, MCL 450.4101 *et seq.*, provides:

(1) A person may be admitted as a member of a limited liability company in connection with the formation of the limited liability company in any of the following ways:

(a) If an operating agreement includes requirements for admission, by complying with those requirements.

(b) If an operating agreement does not include requirements for admission, if either of the following are met:

(*i*) The person signs the initial operating agreement.

(*ii*) The person's status as a member is reflected in the records, tax filings, or other written statement of the limited liability company.

(c) In any manner established in a written agreement of the members. [MCL 450.4501(1).]

Plaintiff alleged that in the spring or summer of 2018, Don said that he wanted plaintiff to be involved in US Ice, so they agreed that Don would be a 34% owner, plaintiff would be a 33% owner, and Don's son would be the remaining 33%. US Ice was formed in October 2018, and the US Ice operating agreement lists Don as the sole member. Plaintiff alleged that he received no financial benefit from US Ice. At the motion hearing on the record, the court stated that there was a question of fact regarding the agreement to co-own US Ice, and was denying the motion. However, the court explicitly granted summary disposition in its order, and courts speak through their written orders and judgments, not their oral pronouncements. *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

Nonetheless, summary disposition was appropriate under MCR 2.116(C)(10). There is no genuine issue of material fact that plaintiff failed to establish that a contract existed or there was any consideration. Defense counsel asserted at oral argument that Don used KMI funds to pay for US Ice equipment, and plaintiff asserted that as an "owner" of KMI, he therefore contributed consideration toward this alleged agreement for membership in US Ice. As concluded in the previous two issues, there is no genuine issue of material fact that plaintiff was not a shareholder or partner in KMI. As such, this reasoning fails. There is no genuine issue of material fact that plaintiff was not admitted as a member of US Ice as required under MCL 450.4501(1), and summary disposition of this claim was proper.

## C. KMI

Plaintiff argues that the trial court abused its discretion in granting defendants reconsideration of the summary disposition order denying summary disposition as to plaintiff's breach-of-contract claim in Count IV related to ownership of KMI because genuine issues of material fact existed that he was a co-owner or shareholder. We disagree.[6]

MCR 2.119 governs motions for reconsideration, and provides in part:

> (3) Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error. [MCR 2.119(F)(3).]

In granting defendants reconsideration, the court stated:

> In its motion, Defendants set forth arguments that were not considered in the Court's prior ruling on the record. Specifically, the Court incorrectly presumed that Count IV was based upon different allegations than Count I. Indeed, both Counts are predicated on the same factual allegation:[] that Plaintiff is a shareholder of [KMI]. Because Defendants have presented different issues that were not considered by the Court, a different disposition must result from correction of the error. Thus, because there is no material issue of fact that Plaintiff is not a shareholder of [KMI], their motion is granted pursuant to MCR 2.119[(F)](3).

This was not an abuse of discretion. This portion of Count IV for breach of contract relied on the same factual allegations of Count I for shareholder oppression, alleging that plaintiff had some sort of ownership interest in KMI. Plaintiff stated in Count IV in the first amended complaint that the parties had an agreement that they were "shareholders," plaintiff holding a 49% interest and Don 51%. Based on the trial court's decision to grant summary disposition in Count I, and the reasoning provided above to affirm summary disposition of Count I for shareholder oppression, there is no genuine issue of material fact that plaintiff is not a shareholder, and the trial court committed a palpable error in its original summary disposition motion in denying this portion of

---

[6] In addition to the standards of review for a motion for summary disposition provided above that apply here, "[t]his Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion for reconsideration." *Shivers v Covenant Healthcare Sys*, 339 Mich App 369, 377; 983 NW2d 427 (2021). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*. at 374 (quotation marks and citation omitted).

Count IV. Therefore, the trial court did not abuse its discretion in granting defendants reconsideration, and summary disposition was proper under MCR 2.116(C)(10).[7]

## VIII. RELIEF FROM JUDGMENT OR ODER

Defendants argue in their cross-appeal that the trial court abused its discretion in granting plaintiff's motion to reopen the case and enter a final judgment by changing the dismissal of Count II of defendants' counterclaim for conversion from "without prejudice" to "with prejudice." We disagree.[8]

After the trial court granted defendants reconsideration regarding Count IV, the only remaining claim was defendants' counterclaim Count II for conversion. On November 16, 2021, the court entered a stipulated order of voluntary dismissal of Count II of defendants' counterclaim for conversion, stating that it was "dismissed pursuant to MCR 2.504." MCR 2.504(A)(2)(b) provides that "[u]nless the order specifies otherwise, a dismissal under subrule (A)(2) is without prejudice." The stipulated order also indicated that it resolved the last pending claim and closed the case. Defense counsel drafted this order, and plaintiff stipulated to its contents.

However, plaintiff then simultaneously filed a claim of appeal in Docket No. 359509 and his motion to reopen the case, arguing that the November 16, 2021 stipulated order was ambiguous whether it was a final order under MCR 7.202(6)(a). Plaintiff asked the trial court to reopen the case and enter an order of dismissal of Count II with prejudice to clarify that it was a final order. After this Court dismissed plaintiff's claim of appeal in Docket No. 359509 for lack of jurisdiction,[9] the trial court entered an order on January 27, 2022, reopening the case and directing plaintiff to enter final judgment on all claims and counterclaims. On February 7, 2022, the trial court entered the final order, stating that Count II of KMI's counterclaim for conversion was "dismissed WITH PREJUDICE and thus constitutes an adjudication on the merits," and that the order resolved all claims and closed the case.

MCR 2.612 provides for relief from judgment as follows:

(A) Clerical Mistakes.

---

[7] Plaintiff also argues that the trial court abused its discretion in denying his motion for reconsideration of the reconsideration order. This issue was not contained in the statement of questions presented in plaintiff's appellant brief on appeal, and is therefore waived. *English v Blue Cross Blue Shield of Mich*, 263 Mich App 449, 459; 688 NW2d 523 (2004).

[8] A trial court's decision on a motion for relief from judgment under MCR 2.612 is reviewed for an abuse of discretion. *Peterson v Auto Owners Ins Co*, 274 Mich App 407, 412; 733 NW2d 413 (2007). This Court reviews de novo the proper interpretation and application of statutes and court rules. *Glasker-Davis*, 333 Mich App at 229.

[9] *Fowler v Keiper*, unpublished order of the Court of Appeals, entered January 25, 2022 (Docket No. 359509).

(1) Clerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it.

* * *

(C) Grounds for Relief from Judgment.

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) Mistake, inadvertence, surprise, or excusable neglect.

* * *

(f) Any other reason justifying relief from the operation of the judgment.

Although plaintiff did not cite MCR 2.612 or use the terms "mistake" or "clerical mistake" in his motion to reopen the case, he asserted that an "ambiguity" existed in the November 16, 2021 stipulated order of dismissal of Count II because it stated that dismissal was under "MCR 2.504," which provides that dismissal is without prejudice unless stated otherwise, but also included the language that it resolved all claims and closed the case, indicating a final order under MCR 7.202(6)(a). Thus, on its face, the order contained a clerical error or mistake. Defense counsel drafted the proposed order containing this mistake, and plaintiff stipulated to its entry. Defendants also moved in this Court to dismiss plaintiff's claim of appeal in Docket No. 359509, arguing that this Court lacked jurisdiction because the November 16, 2021 order of dismissal was without prejudice and therefore not a final order. Because the order contained a clerical mistake, the court had the authority to modify the judgment under MCR 2.612(A)(1) or (C)(1)(a), and did not abuse its discretion in modifying dismissal of Count II of KMI's counterclaim from "without prejudice" to "with prejudice" to correct it.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

-12-